UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Greater St. Stephen Ministries, Inc.,<br><br>                              Plaintiff,<br><br>-against-<br><br>Mt. Hawley Insurance Company,<br><br>                              Defendant. | 24-cv-3130 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

   This opinion resolves a case brought by a church against an insurance company for denying coverage after Hurricane Ida. After discovery, the insurance company moved for summary judgment. Its motion is GRANTED.

## BACKGROUND

   Greater St. Stephen Ministries, Inc. owns property in Louisiana. Dkt. 41-2 ¶ 1. That property was damaged by Hurricane Ida on August 29, 2021. Dkt. 43 ¶ 22; Dkt. 41-2 ¶ 5. Greater St. Stephen had an insurance policy on the property with Mt. Hawley Insurance Company. Dkt. 41-2 ¶ 1. That policy required Greater St. Stephen to give "prompt notice of the loss or damage," and set an absolute outer bound of "one year after the date of loss or damage" to file a claim. *Id.* ¶ 4.

   Close to four months after the hurricane, Greater St. Stephen submitted an insurance claim to Mt. Hawley. *Id.* ¶ 5. Mt. Hawley sent an engineer to the property a month later, but by that time any moisture had dried up, so the engineer reported back that the only damage that he could attribute to the storm could be easily repaired. *Id.* ¶¶ 9–10. Because it concluded that the cost of those repairs fell under the deductible amount, Mt. Hawley refused to pay out. *Id.* ¶ 11. Greater St. Stephen sued in Louisiana state court for breach of the insurance contract plus attorneys' fees. Dkt. 1-2 at 33–39. Mt. Hawley removed the case to federal court citing diversity jurisdiction. Dkt. 1. Then, after removal, Mt. Hawley successfully moved for the case to be transferred to the Southern District of New York, citing the contract's venue provision. Dkts. 9, 14, 15. Here in the Southern District of New York, Mt. Hawley asserted the affirmative defense of late notice and moved for summary judgment on both liability and on attorneys' fees. Dkt. 35.

## LEGAL STANDARDS

   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome."

*Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

I.    **Greater St. Stephen didn't give Mt. Hawley prompt notice of the damage, so summary judgment is granted to Mt. Hawley**

1.    *Greater St. Stephen's notice obligation kicked in a couple of weeks after the hurricane*

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). The insurance contract between Greater St. Stephen and Mt. Hawley has a notice-of-occurrence provision. It creates "Duties in the Event Of Loss or Damage," and one of them is to "Give us prompt notice of the loss or damage." Dkt. 41-2 ¶ 4. Greater St. Stephen didn't submit a formal claim until four months after the hurricane. "A notice obligation is triggered when 'the circumstances known to the insured ... would have suggested to a reasonable person the possibility of a claim.'" *Minasian v. IDS Prop. Cas. Ins. Co.*, 676 F. App'x 29, 31 (2d Cir. 2017) (quoting *Sparacino*, 50 F.3d at 143). So the clock started running for Greater St. Stephen when it should have known about the possibility of a claim.

Greater St. Stephen concedes that it "was made aware of damages to the Property approximately 3-4 days after the Hurricane" and hired a public adjuster to scope it out. Dkt. 41 at 6. But it argues that the clock shouldn't start then because the property manager "was uncertain of the damages." *Id.* at 14. That argument is flatly contradicted by the record. The manager showed up at the property a week or two after the hurricane because he got a call from the tenants about a week earlier telling him that the building was "damaged in the ceiling." Dkt. 41-4 at 12:7–17. That may not be a red flag for possible damage, but it's certainly an orange one. When he arrived, the manager walked around inside the building and saw leaks. *Id.* at 13:25–14:14. That's a red flag. Though he couldn't see if the roof was damaged, when he saw the leaks inside, "that's when [he] said [he] needed to call the insurance adjuster." *Id.* at 14:5–6. So the manager who saw that red flag recognized it: There was a "possibility of a claim." *Minasian*, 676 F. App'x at 31; Dkt. 41-6 at 16:5–14 ("Q: Did you ask her to contact an insurance adjuster because you felt like based on what you saw, there was a possibility that you had storm damage to the property from Hurricane Ida? A: Yes. Q: And at that time you felt like there was also a possibility that you would need to file an insurance claim …? A: I did."). That's when the clock started.

That's the case despite Greater St. Stephen's two arguments to the contrary.

*First*, it doesn't matter that Greater St. Stephen may not have understood the full *extent* of the damages, as it argues. Dkt. 41 at 17. "The standard for when an insured must notify their insurer is not when they learn of the full extent of the damages but is instead when they learn that there is

any 'reasonable possibility of their policy's involvement.'" *Hedvat v. Chubb Nat'l Ins. Co.*, 2024 WL 4615824, at \*2 (2d Cir. 2024) (quoting *Figueroa v. Utica Nat'l Ins. Grp.*, 792 N.Y.S.2d 556, 557 (N.Y. App. Div. 2005)).

*Second*, the facts of this case differ greatly from those in another case that presented this notice issue and warranted denying summary judgment to Mt. Hawley. In *CBKZZ Inv. LLC v. Renaissance Re Syndicate 1458 Lloyds*, 2024 WL 728890 (S.D.N.Y. Feb. 22, 2024), this Court considered whether an insured party had given prompt notice to Mt. Hawley when the parties disagreed about when the insured had notice of damage. Importantly, basic facts about notice in that case were contested. Unlike here, deposition testimony put the date that the insured knew about the damage into question; and unlike here, there was a factual disagreement about the date that the property was inspected for damage. *Id.* at \*2. No such issues are present in this case. Greater St. Stephen's property manager testified unambiguously about when he was alerted to the damage, and the parties don't disagree about any dates of inspection.

### 2. *Greater St. Stephen failed to give prompt notice once its duty to notify kicked in*

Assuming that Greater St. Stephen knew of the possibility of a claim two weeks after Hurricane Ida, that means that its December notice came around 90 days afterward. That's well beyond where the caselaw draws the line. "On numerous occasions, New York Courts have held notice delays of less than three months unreasonable as a matter of law and discharged insurers of obligations." *Minasian*, 676 F. App'x at 31 (collecting cases ranging from 26 to 51 days).

There's another option, though. Greater St. Stephen argues that it gave notice well before December. It points to an email that its insurance broker sent to its insurance agent on November 1, 2021. That email reads:

"We just received a note from RLI/Mt Hawley. They advised they just received a call from Mitchell Adjusters who are trying to send a letter of representation regarding an IDA claim [at the property]. RLI/Mt Hawley does not show a claim number in their system. Was a claim filed for this? I will check with our claims department too, but I have not seen a claim filed for this policy number." Dkt. 41-1 ¶ 27.

This, Greater St. Stephen says, is the smoking gun that shows that it gave Mt. Hawley notice of the claim. But it's hard to read it as anything but the opposite. It suggests only that *nobody* involved in the insurance arrangement—the broker, the agent, or the insurer—had any idea about a claim that Greater St. Stephen was trying to submit. To that effect, in a follow-up email to Greater St. Stephen, its insurance agent indicated that they were confused because Greater St. Stephen had "indicated that we should dismiss pursuit of the claim" and that the insurance agent's "records indicated that [it] would not be filing the claim with the insurance carrier." Dkt. 41-10 at 149. Even taken in the light most favorable to Greater St. Stephen, the record shows only that its insurance adjuster (Mitchell Adjusting) assumed that a claim had been made and reached out to Mt. Hawley about it. But Greater St. Stephen doesn't point the Court to *any* direct evidence of that communication, just the confused follow-ups and reactions that all cut against it. That falls far short of

3

Greater St. Stephen's burden to point to evidence supporting the essential elements of its claims. *Celotex Corp.*, 477 U.S. at 322–23.

## II.    There's no evidence supporting an award of attorneys' fees

Greater St. Stephen wants attorneys' fees for having to sue to enforce the insurance contract. This suit was originally brought under Louisiana law, which authorizes attorneys' fees for bad-faith denials. Greater St. Stephen now concedes that the law of New York, not Louisiana, governs this dispute. Under New York law, an insured "may not recover the expenses incurred in bringing an affirmative action against an insurer," *Globcon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir. 2006) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995)), unless there's a "showing of such bad faith on the part of the insurer in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, 2022 WL 909794, at *3 (S.D.N.Y. Mar. 29, 2022) (cleaned up). "Bad faith exists only where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives." *Id.* (cleaned up).

Greater St. Stephen's argument appears to be that Mt. Hawley acted in bad faith in three ways. First, by failing to open a claim when Mitchell Adjusting reached out about it. Second, by denying full coverage on the claim. And third, by failing to consider evidence that Greater St. Stephen submitted supporting what it thinks it was owed. But the "strong presumption in New York against a finding of bad faith liability by an insurer" "can be rebutted only by evidence establishing that the insurer's refusal to defend was based on more than an arguable difference of opinion and exhibited a gross disregard for its policy obligations." *Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp.*, 2022 WL 94884, at *4 (S.D.N.Y. Jan. 10, 2022) (internal quotation marks omitted). Mt. Hawley has rightly pointed out that the record is devoid of evidence suggesting bad faith, let alone "evil and reprehensible motives." *Wentworth*, 2022 WL 909794, at *3.

The story here is instead a simple one: Greater St. Stephen sat on its hands and didn't report a claim until very late. That meant that when Mt. Hawley went to check out the damage months later, it couldn't assess how much was caused by the hurricane. There's no evidence of bad faith in that process; Greater St. Stephen, having had the benefit of discovery, again "fails to make a showing sufficient to establish the existence of an element essential to [its] case … on which [it] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. That further distinguishes this case from *CBKZZ*, in which the Court denied Mt. Hawley's motion for summary judgment on attorneys' fees when (1) the facts surrounding the coverage denial were still unclear, and (2) Mt. Hawley didn't address bad faith and so waived the argument. *CBKZZ Inv. LLC*, 2024 WL 728890, at *3.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate Dkt. 35, to enter judgment for defendant, and to close this case.

SO ORDERED.

Dated: January 2, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge